761 P.2d 1212

**James V. SMALLWOOD and Lillian Smallwood, husband and wife, Plaintiffs–Respondents,**

v.

**Carole N. DICK, M.D., Defendant–Appellant.**

**No. 17023.**

Supreme Court of Idaho.

Sept. 7, 1988.

Quane, Smith, Howard & Hull, Boise, for defendant-appellant. Jeremiah A. Quane argued.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for plaintiffs-respondents. W. Marcus W. Nye argued.

JOHNSON, Justice.

This is a medical malpractice case. The primary issue presented is whether the trial court abused its discretion in granting a new trial on the issue of damages only if an additur were rejected. We hold that the trial court erroneously determined it did not have the authority to consider granting a new trial on the issue of liability pursuant to I.R.C.P. 59(d). We reverse and remand for reconsideration by the trial court. We also hold that the appeal was properly filed, that the standards for granting new trials do not violate the Idaho Constitution, that the trial court did not abuse its discretion by allowing a physician to testify on rebuttal, and that the trial court properly instructed the jury.

I.

THE FACTS AND PRIOR PROCEEDINGS.

On October 16, 1981 James Smallwood was injured in an automobile accident near Twin Falls. He was cared for at the scene of the accident and then transported by ambulance to a hospital in Twin Falls. There he was examined in the emergency room and admitted to the hospital for observation. X-rays were ordered by the emergency room physician. On the morning of October 17, 1981 appellant, Dr. Carole Dick, a board-certified diagnostic radiologist, reviewed the x-rays. Additional x-rays were ordered by the treating physicians on October 18, 1981. Dr. Dick reviewed these x-rays and discussed them with one of Smallwood's treating physicians that afternoon. Dr. Dick did not see any evidence of fractured vertebrae in the x-rays she reviewed on either October 17 or October 18, 1981.

At approximately 5:00 p.m. on October 18, 1981, Smallwood's primary treating physician telephoned Dr. Dick and told her that Smallwood had pain in his lumbar spine and low back. Dr. Dick told the treating physician that the x-rays showed only arthritis in that area. No further x-rays were suggested by Dr. Dick.

Early on the morning of October 19, 1981 Smallwood arose from his hospital bed, felt a pain in his back, and fell to the floor. It was then determined that Smallwood had a fracture of the tenth thoracic vertebra that had caused the complete severing of his spinal cord resulting in paraplegia.

Smallwood and his wife sought damages from the treating physicians, the hospital and Dr. Dick. The treating physicians and the hospital settled the claims of the Smallwoods against them. The Smallwoods brought this action against Dr. Dick because of Dr. Dick's alleged negligence in failing to see and report the fractured vertebra, in failing to advise the treating physicians that the x-rays were not of the proper quality, and in failing to request that additional x-rays of different views be taken.

At trial a board-certified radiologist testified that Dr. Dick had breached the standard of care applicable to a board-certified radiologist in the Twin Falls community. The primary treating physician testified that Dr. Dick's failure to find, diagnose and report the fractured vertebra was a substantial factor in causing Smallwood's spinal cord to be severed, which resulted in his paraplegia. This doctor testified that if Dr. Dick had found and reported the fracture, he would have immobilized Smallwood and would have taken other precautionary measures, including restricting his movement.

Dr. Dick and two other board-certified radiologists testified that Dr. Dick had not failed to comply with the applicable standard of care for board-certified radiologists practicing in the Twin Falls community.

On rebuttal, another board-certified radiologist testified that Dr. Dick failed to meet the applicable standard of care by not reviewing the x-rays again, or by not suggesting that new x-rays be taken, when the

primary treating physician told Dr. Dick at about 5:00 p.m. on October 18, 1981 that Smallwood had a pain in his lumbar spine or low back.

The unrebutted evidence at trial indicated that Smallwood had sustained, or would sustain, approximately $777,500 in damages for loss of wages, medical care and household services due to his paraplegia. The jury rendered a special verdict finding that there was negligence on the part of Dr. Dick proximately causing Smallwood's injury and awarded Smallwood damages in the amount of $259,162.12. The jury also awarded Mrs. Smallwood $97,552 for loss of consortium.

The Smallwoods filed a motion to increase the jury verdict by additur, a motion for a new trial on damages, and a motion for judgment n.o.v. Dr. Dick filed a motion to alter or amend the judgment and for judgment n.o.v. The trial court granted the motion for a new trial on the issue of damages, conditioned on the rejection by Dr. Dick of an additur increasing the total verdict for the Smallwoods to $1,033,530, subject to an offset of $375,000, representing the amount received by the Smallwoods in settlement from the treating physicians and the hospital. The trial court then issued an "Order of Judgment" in which a new trial was awarded on the single issue as to the amount of damages, unless Dr. Dick within twenty days filed an additur and agreed to accept a total verdict of $1,033,530 subject to the offset of $375,000. Within ten days after this order of judgment Dr. Dick filed a motion to alter or amend the order of judgment, or alternatively, for a new trial on all issues. The trial court denied this motion. Dr. Dick has appealed from the post-trial orders.

## II.

### THE APPEAL WAS PROPERLY FILED.

Following the filing of the appeal by Dr. Dick, the Smallwoods moved to dismiss the appeal on the grounds that the orders from which the appeal were taken were not appealable under I.A.R. 11(a), that this Court had not given permission to appeal under I.A.R. 12 and that the trial court had not executed a certificate pursuant to I.R.C.P. 54(b). We have previously denied this motion. The Smallwoods have reasserted and asked us to reconsider the motion. We continue to adhere to our denial of the motion.

At the time this appeal was filed I.A.R. 11(a)(5) granted the right to appeal "[a]n order granting or refusing a new trial." Effective November 1, 1987, after this appeal was filed, this portion of the rule was amended to include "such orders which contain a conditional grant or denial of a new trial subject to additur and remittitur." Even though this appeal was filed before the amendment to I.A.R. 11(a)(5) became effective, we construe the amended rule not to describe a new category of orders that are appealable, but only to clarify that an order granting or refusing a new trial is appealable, even when the order includes the condition that the grant or denial is subject to additur or remittitur. We hold that I.A.R. 11(a)(5) as it read before the amendment gave Dr. Dick the right to appeal the trial court's order granting a new trial. I.A.R. 17(e)(1) entitles Dr. Dick to raise the other issues presented here that arise from the judgment and the other post-trial orders.

## III.

### THE TRIAL COURT HAD A SUFFICIENT BASIS FOR GRANTING A NEW TRIAL ON THE ISSUE OF DAMAGES.

Dr. Dick contends that the trial court abused its discretion in granting a new trial on the issue of damages only, conditioned on the rejection of an additur, and asks us to accept the test contained in *Leipert v. Honold*, 39 Cal.2d 462, 247 P.2d 324 (1952) as the measure for determining whether the trial court abused its discretion in granting the new trial.

Over twenty-five years ago this Court cited *Leipert* in directing a trial court to exercise its discretion in determining "whether or not the issues to be retried

should be solely limited to the amount of damages sustained by the plaintiff." *Mendenhall v. MacGregor Triangle Co.,* 83 Idaho 145, 151, 358 P.2d 860, 863 (1961). While *Mendenhall* was a case involving allegedly excessive rather than inadequate damages, this Court has also applied *Mendenhall* where the request for a new trial was based on allegedly inadequate damages. *Dinneen v. Finch,* 100 Idaho 620, 624-25, 603 P.2d 575, 578-79 (1979). In *Dineen* we pointed out that whether the verdict is assailed as excessive or as inadequate, the procedure for determining whether a new trial will be granted is the same. *Id.* at 625, 603 P.2d at 578. Recently we have confirmed that the same rules apply when a trial court is asked to consider granting a new trial based upon either excessive or inadequate damages. *Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 608, 726 P.2d 706, 720 (1986); *Quick v. Crane,* 111 Idaho 759, 768, 727 P.2d 1187, 1196 (1986); *Sanchez v. Galey,* 112 Idaho 609, 614, 733 P.2d 1234, 1239 (1986).

Today we reaffirm that the test for determining whether a trial court has abused its discretion in granting a new trial on the issue of damages set forth in *Leipert,* as cited by this Court in *Mendenhall,* is the appropriate test in this state. In *Leipert* the California court stated:

The power of a trial or appellate court to order a new trial on fewer than all the issues is generally recognized, (citations omitted).

The purpose of limited retrials is to expedite the administration of justice by avoiding costly repetition. Such retrials should be granted, however, only if it is clear that no injustice will result. *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 499, 51 S.Ct. 513, 514, 75 L.Ed. 1188; (citation omitted). Some courts have expressed reluctance to limit new trials in negligence cases, suggesting that only rarely is such a step proper. (Citations omitted.) Even in California, where new trials limited to the issue of damages have frequently been approved in personal injury and wrongful death actions, it has been held that a request for such a trial should be

considered with the utmost caution. (Citations omitted.), and that any doubts should be resolved in favor of granting a complete new trial. (Citation omitted.)

The decision on limiting the new trial appropriately rests in the discretion of the trial judge. It is presumed that in passing upon the motion he has weighed the evidence and the possibility of prejudice to the defendant. His decision will not be reversed on appeal unless an abuse of discretion is shown. (Citations omitted.)

Such an abuse is shown when the damages are inadequate, the record discloses that the issue of liability is close, and other circumstances indicate that the verdict was probably the result of prejudice, sympathy, or compromise or that for some other reason the liability issue has not actually been determined.

247 P.2d at 327.

In this case the trial court in considering the motion of the Smallwoods for a new trial on the issue of damages only, pursuant to I.R.C.P. 59(a)(5), properly acknowledged that its responsibility under *Dinneen* and *Quick* was

to weigh the evidence and compare the jury's award to that which the court would have awarded had there been no jury. Where the disparity between the two computations is so great that it appears the award was given under the influence of passion or prejudice, the verdict should fall.

R. 96.

After weighing the evidence the trial court concluded that it would have awarded total damages to the Smallwoods in the amount of $1,033,530. Comparing this to the amount awarded to the Smallwoods by the jury of $356,714.12, the court found that this disparity "is so great that after a full review of the record in this case, it can only be concluded that the verdict was rendered under the influence of passion or prejudice, and it cannot stand." R. 113. It was on this basis that the court granted a new trial conditioned on Dr. Dick's not accepting the additur of $658,800.

In the order of judgment that was issued by the trial court, the trial court stated that it appeared "that the evidence at trial established the liability of [Dr. Dick] for the injuries suffered by the [Smallwoods] as a matter of law." R. 112–13. In its decision on the motion for a new trial the trial court stated that "[a] careful review of the record does not disclose, in any manner, how this verdict was a compromise verdict." R. 104.

While findings of fact are not required under I.R.C.P. 52(a) when trial courts are ruling on motions for new trial under I.R.C.P. 59(a), we consider this to be a situation similar to that presented in *Shelton v. Diamond International Corp.*, 108 Idaho 935, 703 P.2d 699 (1985). There we held that in considering whether a trial court had abused its discretion in granting relief from a default judgment under I.R.C.P. 60(b)(1), where the trial court had made findings of fact, where those findings were "not clearly erroneous," where the trial court properly applied the criteria of the rule involved to those facts, and where the trial court's decision followed logically from the application of the criteria to the facts found, we would not overturn the trial court's decision on the grounds of abuse of discretion. *Id.* at 938, 703 P.2d at 702. We conclude that the same approach should be taken to the trial court's findings in granting a new trial in this case.

■ In order to determine that the trial court abused its discretion in granting a new trial on the issue of damages only, it would be necessary for us to conclude that (1) the damages awarded by the jury were inadequate, (2) the issue of liability was close, and (3) other circumstances indicated that the verdict was probably the result of prejudice, sympathy, or compromise, or that for some other reason, the liability issue was not actually determined by the jury. An abuse of discretion exists only when all three factors are established. If any one of these factors were not established, in applying the *Leipert* test we would uphold the decision of the trial court.

The trial court itself found that the damages awarded were inadequate, fulfilling the first factor of the test in *Leipert.* We are unsure whether the statement by the trial court in its order of judgment that "the evidence at trial established the liability of [Dr. Dick] for the injuries suffered by the [Smallwoods] as a matter of law" was intended to be a finding that the issue of liability was close in this case. Therefore, we defer consideration of this part of the *Leipert* test and proceed to consider the third factor.

■ The trial court found nothing in the record disclosing that this was a compromise verdict. We conclude that this finding was not clearly erroneous. While only nine of the twelve jurors signed the special verdict, this in itself does not demonstrate that the verdict was a compromise. Any implication that may arise from this fact weighs in favor of the verdict not being a compromise, since the dissenters, whether they would have voted for no liability or for more damages, did not concur, and therefore, could not have caused compromise. The fact that the jury awarded the plaintiffs less than the amount of special damages that was supported by the unrebutted evidence at trial also does not prove that the verdict was a compromise. Dr. Dick cites *Rose v. Melody Lane of Wilshire*, 39 Cal.2d 481, 247 P.2d 335 (1952), decided by the California Supreme Court on the same day as *Leipert,* as authority for the proposition that the failure to award undisputed special damages and to make no award for general damages where the plaintiff's injuries have been painful establishes that "the only reasonable conclusion is that the jurors compromised the issue of liability, and a new trial limited to the damage issue is improper." *Id.* 247 P.2d at 340. However, the court in *Rose* went on to examine whether there were other circumstances indicating compromise, as required by *Leipert.* The court pointed out that during deliberations the jurors had requested the re-reading of the testimony of a witness whose testimony related only to liability, which was an indication that the jurors were still debating liability. We find no other circumstances such as this in the record here indicating compromise.

Dr. Dick suggests that the combination of instruction no. 11 and the second question in the special verdict combined to mislead the jury into apportioning damages, and thus, rendering a compromise verdict. Instruction no. 11 stated:

> You are instructed that no physician, hospital or health care provider other than the defendant is a party to this action. The question before you is the negligence, if any, of the defendant, not others. Any testimony or other evidence as to the conduct of such other physicians, hospitals or health care providers should only be considered by you in relation to the negligence, if any, of the defendant.

The second question in the special verdict form asked:

> What is the total amount of damages, if any, sustained by the plaintiff, James V. Smallwood, which were proximately caused by the defendant's negligence?

Dr. Dick cites *Vannoy v. Uniroyal Tire Co.*, 111 Idaho 536, 726 P.2d 648 (1985) to support the contention that this instruction and this question combined to invite the jury to make an apportionment, and argues that the other physicians, hospitals or health-care providers who might have been liable for the injury to Smallwood should have been included on the verdict form. *Vannoy* is distinguishable since it was a comparative negligence case in which the verdict form directed that the negligence attributed to the plaintiffs and the defendants must add up to 100%. The absence of the other potentially responsible individuals or companies could have affected the comparative negligence of the defendant and the plaintiffs that was necessary to determine the defendant's liability. Here, there is no contention that the Smallwoods were negligent. Whether the attending physicians, the hospital, and other health-care providers might also have been liable to the Smallwoods is irrelevant. Dr. Dick would be liable to the Smallwoods, if her negligence were a proximate cause of the injuries sustained by Smallwood, regardless of the degree of responsibility of any others. The combination of instruction no. 11 and the second question of the special verdict

are not another circumstance indicating that the verdict was a compromise, even though the damages might have been reduced. Even if the jury were misled into apportioning the damages due to the Smallwoods, that would not have been a compromise. It would not have tainted the jury's verdict that Dr. Dick was liable to the Smallwoods.

Since the lack of any one of the three factors contained in the *Leipert* test is sufficient to uphold the exercise of a trial court's discretion in granting a new trial on the issue of damages only, and since we have concluded that the trial court's finding that there was no compromise verdict is not clearly erroneous, we would be prepared to affirm the trial court's order granting a new trial on the issue of damages only, if it were not for another facet of the trial court's decision which we address next.

## IV.

## THE TRIAL COURT HAD THE AUTHORITY TO CONSIDER GRANTING A NEW TRIAL ON ALL ISSUES.

■ In its memorandum decision on post-trial motions the trial court stated that Dr. Dick had not requested a new trial pursuant to I.R.C.P. 59(a) and that "this court is, therefore, without the authority to review the verdict of liability under that rule." R. 104. While it is true that Dr. Dick had not, at that time, made a motion for a new trial, and while the motion of the Smallwoods was limited to a new trial on the issue of damages only, the court misperceived its authority under I.R.C.P. 59 to consider granting a new trial on both the issue of liability and the issue of damages. I.R.C.P. 59(d), as it existed at the time the trial court was considering the motion of the Smallwoods for a new trial provided as follows:

> Not later than 10 days after entry of judgment the court on its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party. The court may grant a motion for a new trial, timely

served, for a reason not stated in the motion. In either case, such order shall be made only after giving the parties notice and an opportunity to be heard on the matter, and the court shall specify in the order the grounds therefor.

This rule is essentially the same as Rule 59(d) of the Federal Rules of Civil Procedure. Under the Federal Rules "once the finality of the judgment has been suspended by proper motion, which is pending and undecided, the last sentence of Rule 59(d) ... makes it clear that after giving the parties notice and an opportunity to be heard, the trial court has the power to grant a new trial, on its own initiative, more than 10 days after the entry of judgment for any reason for which it might have granted a new trial on motion of a party." 6A Moore's Federal Practice ¶ 59.11 at 59–268–69 (2nd ed. 1986). *See also Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670 (9th Cir.1985).

Our decision that the trial court had authority under I.R.C.P. 59(d) to consider granting a new trial on both liability and damages makes it unnecessary for us to decide whether Dr. Dick's motion for a new trial, which was served by mail one month after the judgment on the verdict and one week after the order of judgment, was filed timely under I.R.C.P. 59(b). At that time I.R.C.P. 59(b) required motions for new trials to be served no later than ten days "after the entry of judgment."

While the motion for a new trial of the Smallwoods was pending, the court had authority under I.R.C.P. 59(d) to consider granting a trial on the issue of liability as well as the issue of damages, despite the fact that Dr. Dick had not filed a motion for a new trial at that time. Since the trial court did not believe it had authority to review the verdict of liability under I.R.C.P. 59, we reverse the decision of the trial court granting a new trial on the issue of damages only, and remand the case for further proceedings. We instruct the trial court to reconsider its decision granting a new trial on the issue of damages only, in light of the discretionary authority it has under I.R.C.P. 59(d) to grant a new trial on the issue of liability also.

V.

## THE DISCRETION OF A TRIAL COURT TO GRANT A NEW TRIAL DOES NOT VIOLATE THE RIGHT TO A TRIAL BY JURY UNDER THE IDAHO CONSTITUTION.

Dr. Dick contends that the standard for granting a new trial under I.R.C.P. 59(a)(5) does not permit an adequate review of the decision of the trial court in order to insure the right to trial by jury guaranteed by art. 1, § 7 of the Idaho Constitution. She contends that the trial court failed to articulate what unfair behavior occurred, or against which party the jury exhibited passion or prejudice, causing the granting of the new trial. She asserts that this makes it impossible for this Court to review the trial court's decision in a manner that will preserve her right to trial by jury.

This Court has on two occasions recently held that when ruling on motions for a new trial "the trial judge must disclose his reasoning for granting or denying motions for a new trial and/or remittitur or additur unless those reasons are obvious from the record itself." *Quick v. Crane*, 111 Idaho 759, 772, 727 P.2d 1187, 1200 (1986); *Soria v. Sierra Pacific Airlines Inc.*, 111 Idaho 594, 600, 726 P.2d 706, 722 (1986). This requirement resolves any constitutional issue raised here.

The trial court thoroughly reviewed the evidence concerning the damages that the trial court concluded should have been awarded to the Smallwoods. After determining the disparity between the damages that the trial court would have awarded and those that the jury awarded, the trial court concluded that "the disparity is so great that after a full review of the record in this case, it can only be concluded that the verdict was rendered under the influence of passion or prejudice, and it cannot stand." R. 103. This fulfilled the requirements for findings established by *Quick* and *Soria* and cured any deficiency that might otherwise have existed constitutionally as to the preservation of Dr. Dick's right to a trial by jury. In setting aside an

order granting remittitur or new trial in *Sanchez v. Galey,* 112 Idaho 609, 616, 733 P.2d 1234, 1241 (1986) this Court focused on the fact that the trial court "made no finding that the amount of the jury verdict 'appeared to have been given under the influence of passion or prejudice.'" Such a finding was made by the trial court in this case. The finding fulfilled both the requirements of *Quick* and *Soria.* The Idaho Constitution does not require more.

## VI.

### THERE WAS NO BASIS TO OFFSET THE SETTLEMENT AMOUNT AGAINST THE VERDICT OR TO GRANT JUDGMENT N.O.V.

Dr. Dick contends that the trial court should have granted her motions to alter or amend the judgment and for judgment n.o.v. by offsetting the amount received in settlement by the Smallwoods from the treating physicians and the hospital. Since the amount of the settlement was calculated by the court to be $375,000, if the settlement had been offset against the amounts awarded to the Smallwoods by the jury, the Smallwoods would have received nothing from Dr. Dick.

In support of her position Dr. Dick cites I.C. § 6-805, which provides:

A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if such amount or proportion is greater than the consideration paid.

Dr. Dick also cites *Quick v. Crane, supra,* in support of her position. We note that the settlement was documented by releases that express the intent that the parties to the releases intended that the amounts paid in settlement reduced any claims that Smallwoods had against any other tortfeasor. R. 18(a) and 18(b).

The trial court granted the motion to alter or amend the judgment by offsetting the $375,000 settlement against the total damages for the purposes of determining an additur. R. 105. Since we have indicated that we would affirm the decision of the trial court granting a new trial on the issue of damages conditioned on the acceptance of an additur by Dr. Dick, if we were not confronted with the failure of the trial court to recognize its authority to grant a trial on the issue of liability also pursuant to I.R.C.P. 59(d), it is not necessary or appropriate for us to review the failure of the trial court to offset the amount of the settlement against the jury's verdict in favor of the Smallwoods. There will be either a new trial on damages or a new trial on both liability and damages. In either event, the trial court will have the opportunity to deal anew with the offset of the amount of the settlement. We are confident the trial court will read I.C. § 6-805 and the releases and deal with this matter appropriately.

The trial court denied Dr. Dick's motion for judgment n.o.v. after reviewing all the evidence and making all the inferences in favor of the Smallwoods, and concluding that there was substantial evidence to justify submitting the issue of damages to the jury. This is the standard provided for in *Quick,* and we affirm the trial court's decision on this motion.

## VII.

### DR. HALVERSON'S TESTIMONY WAS PROPERLY ADMITTED ON REBUTTAL.

The trial court allowed the Smallwoods to present the evidence of Dr. Halverson, a board-certified radiologist, in rebuttal. Dr. Dick's attorney repeatedly objected to this testimony on the grounds that this testimony should have been offered as part of the case in chief of the Smallwoods and was not proper rebuttal.

Dr. Dick testified as part of her defense about the telephone conversation she had with Smallwood's primary treating physician when he called her at approximately 5:00 p.m. on October 18, 1981. She stated

that the treating physician said that Smallwood had continued to complain of lumbar spine or low back pain during his hospitalization. Dr. Dick stated that she told the treating physician that there were x-rays of Smallwood's lumbar spine and that the only thing she could see on these x-ray was evidence of arthritis. Dr. Dick testified that in her opinion there was nothing else she should have done as a result of this conversation, specifically that the conversation did not require that she suggest to the treating physician that any other x-rays be taken of Smallwood's spine.

Dr. Halverson's testimony on rebuttal was limited to his opinion that, based on the conversation between Dr. Dick and the treating physician, together with the fact that Dr. Dick had previously seen two x-rays of Smallwood's chest, Dr. Dick did not meet the standard of care in the Twin Falls community. In Dr. Halverson's opinion, Dr. Dick should have reviewed the x-rays to see if there was something she hadn't seen before or should have obtained more x-rays of the spine to better demonstrate the area of the patient's pain. Because of Dr. Dick's testimony, this was proper rebuttal.

## VIII.

## THE COURT'S INSTRUCTIONS ON NEGLIGENCE WERE PROPER.

Dr. Dick contends that the trial court erred in not giving defendant's requested instruction no. 9, and instead, gave the court's instructions nos. 8 and 12.

Defendant's requested instruction no. 9 essentially recited the elements for medical malpractice contained in I.C. § 6–1012, plus the requirement that the negligence of the doctor must have been the proximate cause of the injury and damage to the plaintiffs. The court's instruction no. 8 described the burden of proof that the Smallwoods had, including the requirement that they must prove that Dr. Dick was negligent and that her negligence was the proximate cause of the injury to Smallwood. Instruction no. 12 stated:

When I use the term "negligence," I mean the failure to perform a duty imposed by law.

In performing professional services for a patient, as health care provider such— of a health care provider such as the defendant, who holds herself out as a specialist in a particular field of medicine, has a legally imposed duty to provide health care which meets the applicable standard of health care practice for specialists in the same community, practicing in the same field and under similar circumstances.

Tr., Vol. IX, 1801.

While the language of instruction no. 12 was not identical to that of I.C. § 6–1012, the combination of instructions nos. 8 and 12 sufficiently informed the jury of the legal standard contained in I.C. § 6–1012. Any deviations from the words of the statute were not significant and were not error.

## IX.

## CONCLUSION.

We reverse the order of the trial court granting the Smallwoods a new trial on the issue of damages only, and remand the case to the trial court for further proceedings consistent with our opinion. We instruct the trial court to reconsider whether to grant a new trial on the issue of liability as well as on the issue of damages, pursuant to I.R.C.P. 59(d).

Because of our mixed ruling in this case, no costs or attorney fees are awarded on appeal.

SHEPARD, C.J., and OLIVER and TOWLES, JJ. Pro Tem., concur.

TOWLES, Judge Pro Tem., specially concurs.

While I have no objection to the trial court's reconsideration of the issue of the court granting a new trial on the issue of liability, it is my view that the trial court was correct in its previous finding, that liability was established as a matter of law.

Hence, the trial court's ultimate conclusion was correct.

OLIVER, J. Pro Tem., and BISTLINE, J., concur.

BISTLINE, Justice, concurring and dissenting.

## PART I. CONCURRING

I concur with all that Justice Johnson has written other than his reversing and remanding language, and other than the reasoning which gets him to such a conclusion.

## PART II. DISSENTING

On page 11 of Justice Johnson's opinion the first paragraph of Part IV states:

In its memorandum decision on post-trial motions the *trial court stated that Dr. Dick had not requested a new trial pursuant to I.R.C.P. 59(a) and that "this court is, therefore, without the authority to review the verdict of liability under that rule."* R. 104.

This particular opening sentence of Part IV is practically a restatement of the beginning of Dr. Dick defendant/appellant's brief on this one issue:

The *trial court held that because Defendant/Appellant did not request a new trial pursuant to Idaho Rule of Civil Procedure 59(a)*, and Plaintiffs/Respondents requested a new trial on the issue of damages only, *the trial court was without authority to review the verdict of liability.*

Such was an inaccurate recitation of what the trial court wrote, and the Dr. Dick brief has obviously misguided the majority opinion. Entirely different is the language used by the district court:

It must be noted that the defense has not requested a new trial pursuant to Rule 59(a), and this court is, therefore, without authority to review the verdict of liability *under that rule.* Therefore, a new trial on damages is ordered unless the defendant accepts this court's additur.

It is seen that the Dr. Dick brief was in error in saying that the trial court held itself without authority to review the verdict of liability [meaning to do so in considering a grant of a new trial on liability] only because defendant/appellant [Dr. Dick] had not so requested. The trial court was simply taking note that there was on file no defendant/appellant [Dr. Dick] motion for a new trial on liability, and *that* rule having not been invoked by the defendant/appellant, the court had no authority under *that* rule, *i.e.*, 59(a).

Moreover, the trial court's statement to that effect was not a statement hanging in open air, but rather the end of a paragraph where it can be said, without fear of contradiction, the district court demonstrates that *it did consider the defendant/appellant's argument that there should be a whole new trial:*

This court has considered the defendant's argument that if a new trial on damages is required under I.R.C.P. 59(a)(5), *a new trial would also be required on the issue of liability.* Defendant argues that the verdict was a compromise verdict, and that the finding of damages was so intertwined with the finding of liability, any prejudice found in the damage award would be inextricably linked to the jury's verdict with respect to liability. *A careful review of the record does not disclose, in any manner, how this verdict was a compromise verdict.* It must be noted that the defense has not requested a new trial pursuant to Rule 59(a), and this court is, therefore, without the authority to review the verdict of liability under that rule. Therefore, a new trial on damages is ordered unless the defendant accepts this court's additur.

The trial court understood very well the defendant/appellant's argument that the verdict was a compromise verdict. Defendant/appellant in her brief (p. 16) filed in this court states, "Thus, even ignoring Rule 59, the trial court had the authority to review the verdict of liability, and to decide the question of whether the verdict for Plaintiff James Smallwood was a compromised verdict." I humbly submit that the trial court did exactly that, did "decide the question of whether the verdict for plain-

tiff James Smallwood was a compromise verdict." Finding that it was not, after a careful review of the record, the new trial was limited to the issue of damages.

An open and reasoning mind can draw no other conclusion from the trial court's own language:

> Defendant argues that the verdict was a compromise verdict, and that the finding of damages was so intertwined with the finding of liability, any prejudice found in the damage award would be inextricably linked to the jury's verdict with respect to liability. *A careful review of the record does not disclose,* in any manner, how this verdict was a compromise verdict.

It cannot be said that the trial court considered itself without authority to consider defendant's contention that the jury's verdict was a compromise entitling it to a new trial on the issue of liability. It has to be conceded and said that the district court in fact did consider the issue, and did rule on it.

I mention also a problem with some language at p. 865, 761 P.2d at 1217 of the majority opinion, which, taken together with the erroneous conclusion that the trial court did not know of the independent authority to award new trials, seems to be the predicate which is thought to justify reversing the trial court:

> We are unsure whether the statement by the trial court in its order of judgment that 'the evidence at trial established the liability of [Dr. Dick] for the injuries suffered by the [Smallwoods] as a matter of law' was intended to be a finding that liability was close in this case.

To adjust it to my own capabilities of reading comprehension, I have broken it down into two sentences:

> The trial court stated that *'the evidence at trial established the liability of [Dr. Dick]* for the injuries suffered by the [Smallwoods] *as a matter of law.' We are unsure whether that statement was intended to be a finding that liability was a close issue.*

First, it is noted that this appeared in an Order of Judgment which the trial court

entered following and pursuant to the 20 page MEMORANDUM DECISION ON POST-TRIAL MOTIONS, which was declared to constitute the court's findings and conclusions on the issues presented. The order recited the court's four main rulings:

> That the verdict of the jury in the sum of $356,714.12 was inadequate and rendered under the influence of passion or prejudice and was not in accordance wit the evidence as presented at the trial.
>
> \* \* \* \* \* \*
>
> That the evidence conclusively demonstrated that Plaintiffs suffered damages greatly in excess of the amount awarded by the jury, namely the sum of $1,033,-530.00.
>
> \* \* \* \* \* \*
>
> *That the evidence at trial established the liability of the Defendant* for the injuries suffered by the Plaintiffs *as a matter of law.*
>
> \* \* \* \* \* \*
>
> That the Defendant is entitled to an offset in the sum of $375,000 against the total damages for the purposes of determining an Additur.

The Memorandum Decision did not purport to be an order; it merely provided the court's *ratio decedeni* in passing on the issues presented. An order was required; the order was entered.

The concern expressed in Justice Johnson's opinion is the third ruling, *i.e.*, does that ruling amount to a finding that liability was a close issue? Or, otherwise put, was the trial court *intending* to say that liability was a close issue?

One would surmise that if the trial court thought this to be a close issue, and intended to say so, the court was articulate enough to say so. If that were the case, the court would not have ruled that the defendant was liable to the plaintiffs as a matter of law. I can only express a great concern that the trial court's plain language can be so misunderstood. "As a matter of law" constitutes words of art that have many applications, *i.e.*, in passing on motions for summary judgment, in pass-

ing on motions for directed verdicts, and in passing on motions for judgment n.o.v. Attorneys may not know what "as a matter of law means" from this day forward, but they have known heretofore that it is equivalent to saying that on a given issue reasonable minds could not differ. In this particular case the trial court used that language in a ruling which had to do with the defendant's argument for a new trial on the issue of liability, claiming that the jury had arrived at a compromise verdict.

The trial bar may be very disheartened to see appellate jurists having a problem with plainly written and well-recognized English language which is peculiar to the legal profession.

The result achieved by the majority is based solely upon the view that Judge Hurlbutt was under the incorrect impression that he could not independently order a new trial on liability. To be more explicit, at p. 866, 761 P.2d at 1218 of the opinion it is stated that the trial "court misperceived [failed to recognize] its authority under I.R.C.P. 59 to consider granting a new trial on both the issue of liability and the issue of damages." In support of that statement paragraph (d) of Rule 59 is cited and quoted.

I doubt that any of our Idaho judges at any level are not aware of Rule 59(d), and also that most trial practitioners of more than three years experience are likewise aware. It is one thing to say, as did the trial court, that without the defendant having filed a 59(a) motion, it could not grant an unmade motion—but quite another thing to imply that the court did not know of its own power to do so—assuming that it perceived some compulsion for doing so. Why should the court feel any such compulsion when the defendant, full well knowing the state of the record, did not bother to make any such motion? A review of the record satisfied the mind of the trial court that the defendant was liable as a matter of law. This Court does not meet that issue, does not overrule the trial court's considered ruling after review. How, now?

This case, more than any other is as close to being a case of *res ipsa loquitur* negligence as one might expect to encounter. This defendant doctor in the exercise of her specialty failed to observe the observable.

The trial court was clearly of the view that the defendant's liability was not a close issue, and obviously would have granted the plaintiff a judgment n.o.v. on liability had the jury mis-fired on that issue. In that regard it is not necessary to speculate, but to merely rely upon the court's statement that liability was established as a matter of law.

It is too stretching of credulity to assert that the trial court—in this case of all cases—did not know the provisions of Rule 59(d). There was no basis for the court to grant the defendant/appellant a liability second trial on her own motion, or even on a defendant/appellant's motion, had one been made. The defendant/appellant only sought to argue a compromise verdict, did so, and the court correctly ruled against the contention. A trial court better than an appellate court knows the case over which it has presided for three weeks, and, *ordinarily* is said to be entitled to considerable deference when its findings are challenged.

This action was filed five years ago, and although like Judge Towles and Judge Oliver, I register "no objection" to Justice Johnson's proposal to remand for the reconsideration of a motion the trial court has already ruled upon, I can see no reason for so doing, and until now did not realize that I could object. I simply disagree. To the defendant/appellant's delight, I am certain, the effort to lead some members of this Court astray has succeeded. However, the trial judge will be seen as more learned and more acute.

West Publishing Company may have difficulty in writing the headnotes for this case. There are three votes which say that the trial court was not in error in ruling that the defendant/appellant was liable as a matter of law, which certainly does not indicate that the issue on liability was close. Far from it. And with three votes that should surface from West as a holding

in the case, which so long as it stands is the law of the case.