603 P.2d 1001

**Harold I. TIBBS and Virginia A. Tibbs, husband and wife, Plaintiffs-Respondents,**

v.

**The CITY OF SANDPOINT, a Municipal Corporation and Bonner County, a political subdivision of the State of Idaho, Defendants-Appellants.**

**No. 12713.**

Supreme Court of Idaho.

Dec. 6, 1979.

Gary A. Finney and Philip H. Robinson, Sandpoint, for defendants-appellants.

Raymond T. Greene, Jr. and Bruce H. Greene of Greene & Hunt, Sandpoint, for plaintiffs-respondents.

THOMAS, Justice Pro Tem.

On August 14, 1975, the plaintiffs Harold and Virginia Tibbs commenced an action against the City of Sandpoint and Bonner County seeking compensation for the reduc-tion in value of their property which they claimed resulted from the expansion of an airport owned and operated jointly by the defendants. The airport was adjacent to the plaintiffs' land. It had been there since 1949, but the air traffic had not previously affected the use and enjoyment of plain-tiffs' property. In 1972 the runway was extended an additional 730 feet so that at its nearest point it came within about 1½ feet of plaintiffs' fenceline. The plaintiffs allege that as a result of the extension of the runway the airport is now being used more frequently and by larger and noisier airplanes which have been flying over their property at much lower altitudes.

At the trial plaintiffs presented evidence in support of these allegations. Testimony was offered to show that the airplanes had an adverse effect upon livestock and pre-vented the plaintiffs from using the land nearest the airport for pasture. There was also testimony that low flights interfered with the farming of the property. There was further testimony that plaintiffs' prop-erty had been previously suited for rural residential use but now was not suitable for residences of any type, and it was doubtful that any structure could be built on the portion of property most affected by the air traffic.

The defendants offered testimony from a real estate appraiser who had done some preliminary work in assessing the value of the property, although he had not complet-ed an actual appraisal. His opinion was that the plaintiffs' property had suffered no loss in value as a result of the extension of the runway. This opinion was based on his observations of the flight patterns of the airport and his investigation and experience around other airports.

The case was submitted to the jury. The jury rendered a verdict in favor of the defendants. The plaintiffs then moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court ordered a new trial, essentially on the grounds that the "verdict of the jury was against the weight of the evidence and against the law . . . ." Defendants

have appealed from the order for a new trial.

■ The appellants first assert that the trial court should be reversed because of its failure to set forth in particular its *reasons* for granting a new trial. The appellants apparently confuse the requirement that a movant set out specific reasons in support of his motion for a new trial, *Paullis v. Liedke,* 92 Idaho 323, 442 P.2d 733 (1968), with the less demanding requirement that the court granting the motion need only state the *grounds* upon which it is granted. This Court has previously pointed out that a trial court need not specify its *reasons* for granting a new trial; it is sufficient for the court to set down the statutory *grounds* for its order. *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977). Although we encourage trial courts to specifically set forth their reasons for ordering a new trial, failure to do so is not error. The issue on appeal is whether the grounds stated would justify the granting of the motion. *Id.*

■ Appellants next contend that the trial court erroneously disturbed the factfinding function of the jury by granting the motion for a new trial. In support of this position they cite *Ryals v. Broadbent Development Co.,* 98 Idaho 392, 565 P.2d 982 (1977). However, this Court has recently severely limited the impact of the *Ryals* decision:

"[W]e do not believe that the plurality opinion in *Ryals,* in which only two members of the Court concurred, is controlling authority in this case. The *Ryals* plurality opinion suggested that where a jury returns a special verdict on the issues of negligence and proximate cause the trial court's authority to grant a new trial is limited to the narrow standard enunciated in *National Produce Distributors v. Grube,* 78 Idaho 33, 297 P.2d 284 (1956), and the dissenting opinion in *Deshazer v. Tompkins,* 93 Idaho 267, 460 P.2d 402 (1969) (Shepard, J., dissenting). We now see no reason why special verdicts should be treated differently than general verdicts, and we reaffirm the rule which this

Court first approved as early as *Jacksha v. Gilbert,* 4 Idaho 738, 44 P. 555 (1896), and as recently as *Everton v. Blair,* 99 Idaho 14, 576 P.2d 585 (1978), that:

'The trial court is vested with broad discretion in granting a new trial. On appeal, the determination of the trial court will not be overturned absent a manifest abuse of discretion.' *Id.* at 15, 576 P.2d at 586." *Seppi v. Betty,* 99 Idaho 186, 189, 579 P.2d 683, 686 (1978).

We are therefore limited in our review to the appellate standard of "abuse of discretion." As this Court has aptly stated:

"We decline to ascribe a definitive meaning to the amorphous phrase 'abuse of discretion' solely for the purpose of this case, but it will suffice to say, that where the trial court has exercised such discretion after a careful consideration of the relevant factual circumstances and principles of law, and without arbitrary disregard for those facts and principles of justice, we will not disturb that action." *Lisher v. Krasselt,* 96 Idaho 854, 857, 538 P.2d 783, 786 (1975).

In discussing the type of discretion to be exercised in disposing of a motion for a new trial, this Court has indicated:

"[T]he trial court may grant a new trial when it is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice." *Blaine v. Byers,* 91 Idaho 665, 671, 429 P.2d 397, 403 (1967).

The trial court explained its decision to order a new trial as follows:

"The overwhelming evidence at the trial indicated that damage did occur to plaintiffs' property by reason of the overflight. It was apparent to the Court that no credible evidence was offered by the defendants to show that no damage had occurred to plaintiffs' property by reason of the operation of the airport and it would be the opinion of the Court that

the verdict of the jury was against the weight of the evidence . . . ."

Defendant appellants contend that the court below erred in assuming that they had some type of a burden of proof as to damages. Appellants emphasize the trial court's statement to the effect that defendants failed to show that no damage had occurred. This statement is taken by the appellants to mean that they were erroneously saddled with the burden of going forward with evidence. However, when the lower court's statement is examined in its proper context, it is clear that such statement was only explanatory. The trial court evidently found the evidence of plaintiffs' damages to be so persuasive that if uncontradicted by the defendants it could not justify the verdict reached by the jury. We cannot say that the trial court unwisely exercised its discretion in granting a new trial for the above reason.[1] Defendants' appraiser was the only witness who stated that plaintiffs' property had suffered no loss in value as a result of the expansion of the airport. Since he had not done an actual appraisal of the property, the trial court was entitled to conclude that "said testimony should have carried very little weight with the jury." The judgment of the trial court is therefore affirmed.

Since this matter will be remanded for a new trial, it is appropriate to comment on other questions implicitly involved in this action. Cf. I.C. § 1–205 (when granting a new trial, this Court should determine all pertinent questions of law).

Since this case was argued, this Court has decided the case of Rueth v. State, 100 Idaho 203, 596 P.2d 75 (1979), which sets forth some guidelines which would be helpful on retrial. In Rueth the Court clearly states that the determination of whether or not there was a taking is a matter of law to be resolved by the trial court. The trial court should also determine the nature of the property interest so taken. Rueth points out that all issues except the sole issue relating to compensation are to be tried by the court as in the ordinary condemnation case. Therefore, the trial court should also determine the time of taking. It clearly appears from the trial of this case that the court below felt there was a taking and that the damages offered by the jury were wholly inadequate.

■ Once the trial court has made the finding that there was a taking of the property, the extent of the damages and the measure thereof are questions for the jury. These two factors, both the extent and the measure of damages, are inextricably fixed by a finding of the time of taking. This Court has previously decided that in an inverse condemnation proceeding damages are to be assessed at the time of taking. In Lobdell v. State, 89 Idaho 559, 407 P.2d 135 (1965), a case involving impairment of the access to the plaintiff's property, the Court stated:

"The basis of the damages awarded is . . . the difference in the value of the property before and after the destruction or impairment of the access . . . ." Id. at 564, 407 P.2d at 137.

At trial, there arose some confusion as to the actual date of taking. The trial court at one time stated that the appropriate date was November, 1972. Later, in colloquy with counsel, the court considered a date in 1975 and also stated he might leave it up to the jury to decide the date of taking. This confusion also affected the admissibility of certain evidence regarding the valuation of plaintiffs' property on particular dates. The court denied the admission of evidence as to damages occurring in 1975, the year the action was commenced. In addition, when plaintiffs attempted to show damages in November of 1972, defendants on cross examination pointed out that the damage

1. Although we decline to specifically address the issue, we note the possibility that a jury may be precluded from returning a verdict of "no damages" in an inverse condemnation case. As discussed below, recent case law indicates that the issue of whether there exists a "taking" is for the trial court only. Once a trial court finds that the interference with plaintiff's property rights is so substantial as to constitute a "taking," a jury verdict assessing damages at zero might be viewed to be inherently inconsistent.

did not occur all at once; that there was very little change in the value of plaintiffs' property at the time immediately preceding and the time immediately following the extension of the airport.

When considering the time of taking and the extent thereof, some guidelines may be gleaned from other jurisdictions. The United States Supreme Court has held that flights are not a taking "unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." *United States v. Causby*, 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206, 1213 (1964). The United States Court of Claims has listed the following factors to be considered in determining when the interference becomes so serious as to constitute a taking: the frequency and level of flights, the type of planes, accompanying effects such as noise, uses of the property, the effect on values, reasonable reactions of humans below, and the impact upon animals and vegetable life. *Jensen v. United States*, 305 F.2d 444, 447, 158 Ct.Cl. 333 (Ct.Cl.1962). Since it is apparent that the taking of the property does not occur all at once, it would be appropriate to adopt the measure of damages proposed by the Court of Claims, that is, the difference in the value of plaintiffs' properties before the taking of the easement and the value "*after the full extent of the impairment of plaintiffs' use and enjoyment of them become apparent.*" *Aaron v. United States*, 311 F.2d 798, 802, 160 Ct.Cl. 295 (Ct.Cl.1963) (emphasis added).

In a California case where a significant appreciation in land values had created a problem in the valuation of the subject property before and after the impairment, an appellate court justified the damages awarded as being the difference in the actual value of the property after the impairment with what the value would have been had the impairment not occurred. *Steiger v. City of San Diego*, 163 Cal.App.2d 110, 329 P.2d 94 (1958).

The Idaho inverse condemnation case cited above sets the damages at the value differential before and after the impairment, based upon the highest and best use to which the land involved is suitable. *Lobdell v. State, supra; see Weaver v. Village of Bancroft*, 92 Idaho 189, 439 P.2d 697 (1968). In this case, then, the damages should be the difference in the value of the property on the date of the taking at its highest and best use if it were unimpaired and the value of its highest and best use on said date considering the full extent of its impairment. The actual date of taking, although not readily susceptible to exact determination, is to be fixed at the point in time at which the impairment, of such a degree and kind as to constitute a substantial interference with plaintiffs' property interest, became apparent.

The order of the district court granting a new trial is hereby affirmed.

DONALDSON, C. J., and SMITH and SWANSTROM, JJ. pro tem., concur.

SHEPARD, J., dissents without opinion.