823 P.2d 775

Linda Kay BURGGRAF, as Personal Representative of the Estate of Stephen S. Burggraf, deceased; Linda Kay Burggraf, Individually; and Linda Kay Burggraf, Guardian ad litem for Stephanie Kay Burggraf, James Robert Burggraf, and Jennifer Linn Burggraf, minor children, Plaintiff–Respondent,

v.

Jeannette CHAFFIN, as Personal Representative of the Estate of John Walter Chaffin, deceased, Defendant–Appellant.

Laurie CAIN, as Personal Representative of the Estate of Gary Cain, deceased; Laurie Cain, Individually; Laurie Cain, as Guardian ad litem for Amy Cain, a minor child; Bruce Patterson; Cheryl Patterson; and Brian Patterson, Plaintiffs–Respondents,

v.

Jeannette CHAFFIN, as Personal Representative of the Estate of John Walter Chaffin, deceased; Robert V. Burggraf, aka Robert V. Burggraf, Sr., dba Robert V. Burggraf Company, R.V. Burggraf Co., Robert Burggraf Company, R.V. Burggraf Construction Co., Robert V. Burggraf Construction Co., or Burggraf Construction Co., Defendants–Appellants.

No. 18584.

Supreme Court of Idaho,
Idaho Falls Term, Sept. 1991.

Dec. 26, 1991.

Thomsen & Stephens, Idaho Falls, for appellants. Curt R. Thomsen argued.

Anderson, Pike & Bush, Idaho Falls and Wilcox, Dewsnup & King, Salt Lake City,

Utah, for respondents. Edward B. Havas argued.

BAKES, Chief Justice.

Defendant appeals the trial court's decision granting plaintiffs' motion for new trial, alleging that the trial court abused its discretion in granting a new trial.

On May 20, 1987, while on a trip to submit a bid on behalf of the Robert V. Burggraf Company (Burggraf Corporation), John Walter Chaffin, Gary Cain and Stephen S. Burggraf were killed in an airplane crash in Cody, Wyoming. The aircraft, owned by Robert V. Burggraf, Sr., was leased to the Burggraf Corporation and was piloted by Mr. Chaffin.

On January 21, 1988, Linda Burggraf (Burggraf), on her own behalf, and on the behalf of her children and her husband Stephen S. Burggraf's estate, brought a wrongful death action against Jeannette Chaffin (Chaffin), as personal representative of the estate of John Walter Chaffin. Burggraf alleged that John Chaffin negligently operated the aircraft which resulted in the death of her husband, Stephen Burggraf. A similar action was brought by Laurie Cain (Cain) for the death of her husband, Gary Cain. The two actions were consolidated by court order on July 11, 1988.[1]

In her answer, Chaffin asserted several affirmative defenses including an affirmative defense that the Idaho worker's compensation laws precluded any action by the plaintiffs against Chaffin because John Chaffin, Gary Cain and Stephen Burggraf were co-employees of the Burggraf Corporation, and therefore, plaintiffs' exclusive remedy was worker's compensation.[2] *See* I.C. § 72–209; *DeMoss v. City of Coeur d'Alene*, 118 Idaho 176, 795 P.2d 875 (1990). The court ordered a bifurcation of issues for trial so that the issues of John Chaffin's employment status and the exclusiveness of the worker's compensation remedy could be tried separately and prior to the issues of negligence and damages.

At trial, it was shown that Mr. Chaffin's primary business was as owner of an automobile dealership, Chaffin's Oldsmobile. However, Mr. Chaffin also piloted the airplane for both the corporate business of the Burggraf Corporation and when the aircraft was used in charter service. Mr. Chaffin and the Burggraf Corporation had an oral agreement that for his services as a pilot for Burggraf corporate business, he would be compensated by allowing him free use of the aircraft for his own personal flying purposes on a ratio of one hour of personal use for every ten hours he flew for the corporation. The cost of operating the aircraft was approximately $350.00 per hour, and thus Chaffin's compensation for piloting the aircraft on Burggraf company business was approximately $35.00 per hour. For his services as a charter pilot when the aircraft was chartered to other persons or businesses, Mr. Chaffin was paid regular monetary compensation either from the Burggraf Corporation or directly from the chartering party. Mr. Chaffin took personal responsibility to see that the airplane was properly serviced and maintained, all at the expense of the Burggraf Corporation.

At the conclusion of the trial the jury returned a unanimous verdict finding that John Chaffin was an employee of the Burggraf Corporation. Plaintiffs moved for a j.n.o.v. or, in the alternative, a new trial. The court issued its decision denying plaintiffs' motion for j.n.o.v., finding that there was substantial evidence to support the jury's verdict. However, the court did grant plaintiffs' motion for new trial, con-

---

1. Cain initially amended her complaint to add Robert V. Burggraf, Sr., as a defendant, contending that Mr. Burggraf was John Chaffin's employer and was vicariously liable under the law of *respondeat superior*. However, the trial court, prior to submitting the case to the jury, directed a verdict in favor of Mr. Burggraf, finding that he could not be Mr. Chaffin's em-

ployer as a matter of law. That dismissal is not raised as an issue in this appeal.

2. The record reflects that all three widows— Mrs. Chaffin, Mrs. Cain and Mrs. Burggraf— filed claims for worker's compensation death benefits from the Burggraf Corporation, and all received those benefits.

cluding that the jury's verdict was against the clear weight of the evidence.

In ruling on the motion for new trial, the trial court stated that the weight of the evidence, in his opinion, indicated that Mr. Chaffin was not an employee of the Burggraf Corporation. Two items of evidence weighed heavily in the court's decision to grant a new trial. First, the court stated that Mr. Chaffin was not specifically listed as an employee on any payroll record of the Burggraf Corporation, nor was he ever given a W–2 tax form, but rather Mr. Chaffin was given a Form 1099 on which a dollar figure was inserted in a box calling for "non-employee compensation." Second, while the court acknowledged that Mr. Chaffin had previously been paid some worker's compensation injury benefits as an employee of Burggraf Corporation by Wausau Insurance Company, the Burggraf Corporation's worker's compensation insurer, the court concluded that no premium had been paid by the Burggraf Corporation based on the actual compensation received by Mr. Chaffin. The Burggraf Corporation had only paid a premium of $200 a month for the "air crew" of the corporation. Based primarily on those two claimed evidentiary facts, the trial court concluded that the jury's verdict was against the great weight of the evidence and granted the plaintiffs' motion for a new trial. The personal representative of Mr. Chaffin's estate has appealed, alleging that the trial court misunderstood or misconstrued the evidence on those issues and, further, applied the wrong standard in granting the motion for new trial.

■■■ In ruling on a motion for a new trial, the trial court has broad discretion. *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986).

In reviewing the [granting] of a motion for a new trial our standard is well settled. This Court has been consistent in recognizing the trial court's important function in passing on motions for new trial and upholding the trial court's grant or denial of such motions unless the court has *manifestly* abused the wide discretion vested in it. *Tibbs v. City of*

*Sandpoint,* 100 Idaho 667, 669, 603 P.2d 1001, 1003 (1979); *Seppi v. Betty,* 99 Idaho 186, 189, 579 P.2d 683, 686 (1978). The trial court is in a far better position to weigh the demeanor, credibility, and testimony of witnesses, and the persuasiveness of all the evidence. Appellate review is necessarily more limited. While we must review the evidence, we are not in a position to "weigh" it as the trial court can. (Citation omitted).

111 Idaho at 770, 727 P.2d at 1198 (emphasis in original). The appropriate standard of review by this Court, therefore, is whether the trial court abused its discretion in granting plaintiffs' motion. *Id; Jones v. Panhandle Distributors, Inc.,* 117 Idaho 750, 792 P.2d 315 (1990).

Recently, in *Sun Valley Shopping Ctr. v. Idaho Power,* 119 Idaho 87, 803 P.2d 993 (1991), this Court set forth the appropriate test for evaluating whether a trial court has abused its discretion.

[T]he sequence of our inquiry is: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. (Citations omitted.)

119 Idaho at 94, 803 P.2d at 1000.

In this case, the trial court properly recognized the issue as one involving discretion. In its memorandum decision, the trial court stated:

In a previous case this Court was told by the Supreme Court that it failed to recognize the power possessed by the Court to evaluate the evidence and determine whether a new trial should be granted. See *Robertson v. Richards,* 115 Idaho 628, 769 P.2d 505 (1989) [(1989)]). The Appellate Court reminded this Court that the trial court is given broad discretion in granting a new trial, *Jacksa [Jacksha] v. Gilbert,* 4 Idaho 738, 44 P. 555 (1896).

Regarding whether the trial court acted within the outer boundaries of its discretion and applied the correct legal standards

to the specific choices available in a new trial setting, a two-pronged analysis has been established which the trial court must follow in making a determination with regard to a motion for new trial. In *Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1989), the Court, citing *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967), described the analysis as follows:

> The first prong directs the trial judge to consider whether the verdict was against the weight of the evidence and if the ends of justice would be served by vacating the verdict.
>
> . . . .
>
> The second prong of *Blaine* directs the trial court to consider whether a different result would follow in a retrial.

115 Idaho at 631, 632, 769 P.2d at 508, 509.

In this case, after the trial court weighed the evidence, the court stated:

> [T]his Court after weighing the evidence and considering the law in Idaho finds that the jury's verdict is against the clear weight of the evidence. This Court believes that if another trial were held that a different result *may* occur. The ends of justice require that a new trial be ordered.[3] (Emphasis added.)

■ It is the final requirement of the *Sun Valley* analysis, which asks us to evaluate the trial court's "exercise of reason," which causes us to conclude that the trial court erred in overturning the jury's verdict. In reviewing the evidence, the trial court stated: "One of the most significant pieces of evidence presented at trial was that Burggraf [Corporation] reported Mr. Chaffin's income on a Form 1099 as non-

employee compensation. In evaluating this evidence the Court is concerned with the decision making process that Burggraf [Corporation] used in deciding whether to report Chaffin's income on Form 1099 instead of a W–2." In light of this concern, the trial court then asked rhetorically how the Burggraf Corporation itself would have classified Mr. Chaffin's employment status. The court posed several questions which it thought the Burggraf Corporation would necessarily have to ask itself in classifying Mr. Chaffin's employment status. Those questions were:

1. What is the extent of the controls we have over the pilot?

2. If the compensation is a trade of company flight time for a ratio of personal flight time is that employee type compensation or independent contractor type compensation?

3. What is the effect of not having to keep track of any of the time put in by Mr. Chaffin in going to and from the airport, pre-flight preparation time, time spent in getting the airplane serviced and maintained, lay-over time awaiting the return flight? This time could vary considerably under various circumstances.

4. What is the effect of Mr. Chaffin having a car agency as his major occupation and even though this man almost invariably is able to work and adjust his other business affairs in order to fly, which he loved to do? But he is not under any contractual relationship to fly when given notice of an impending flight.

---

**3.** The trial court seems to have based its decision to grant a new trial on a possibility that a different result would occur on retrial. The court stated that, "This Court believes that if another trial were held that a different result *may* occur." This is contrary to the *Blaine* test which holds, "[A] motion for new trial should not be granted unless it appears that a different result *would* follow a retrial." 91 Idaho at 671, 429 P.2d at 403 (emphasis added). *See also, Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 726 P.2d 706 (1986). It is always possible that a different result "may" result if a party is given another try at a different jury. However, the standard of the rule requires more than a mere possibility. There must be a probability

that a different result would obtain on new trial before the new trial standard of *Robertson v. Richards,* 115 Idaho 628, 769 P.2d 505 (1989), is satisfied. While the trial court's opinion initially recited the correct *Blaine* test requirement, in applying the test to the facts of this case and stating that "a different result may occur," we are left somewhat in doubt as to whether the trial court understood that the *Blaine* test requires more than that a different result "may" occur. The *Blaine* test requires that a different result "would" occur before the court can exercise its discretion in granting a new trial. However, we do not base our decision on this apparent application of the wrong standard.

The court then answered these rhetorical questions, speculating that the Burggraf Corporation would have decided "that their pilot was not the usual type of employee and that the compensation should be reported on a Form 1099." The trial court supported his answer to the questions with the statement that "[t]he name of John Chaffin never appeared on any form as an employee for worker's compensation insurance premium computation. There was an entry for 'air crew.' However, the compensation figure for the 'air crew' bore no resemblance to the compensation received by Mr. Chaffin."

Chaffin alleges on appeal that the trial court's opinion and analysis misconstrued the evidence in the record and further was based upon speculation as to what the trial court thought the Burggraf Corporation would have thought, not upon an "exercise of reason," based upon the evidence and the issues submitted to the jury. Chaffin asserts that the trial court overlooked or misconstrued the uncontradicted evidence regarding Mr. Chaffin's worker's compensation coverage and prior compensation benefits, and the evidence regarding how the Burggraf Corporation reported Mr. Chaffin's compensation from the company. Accordingly, Chaffin argues that the trial court did not "reach its decision by an exercise of reason," as required by *Sun Valley Shopping Center v. Idaho Power Co., supra*, and therefore the trial court's order granting a new trial must be reversed. *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967); *Baldwin v. Ewing*, 69 Idaho 176, 204 P.2d 430 (1949).

Regarding the evidence concerning Mr. Chaffin's receipt of worker's compensation benefits as an employee of Burggraf resulting from a prior accident at the airport, the trial court stated that that evidence was "suspect." Prior to the fatal crash involved in this case, Mr. Chaffin had injured himself at the airport while involved in his responsibility to see that the aircraft was properly serviced and maintained. Mr. Chaffin personally prepared and signed a claim for worker's compensation benefits, asserting that he was an employee of Burggraf Corporation. The claim was not questioned by the Burggraf Corporation or its surety, and Mr. Chaffin received employee benefits as a result of that claim. The trial court nevertheless found that evidence of prior conduct to be "suspect" because the $200 per month estimated compensation paid to the "air crew" by the Burggraf Corporation, upon which the worker's compensation insurance premium was computed, had, according to the trial court, "no resemblance to the compensation Mr. Chaffin was actually receiving." However, the uncontradicted testimony in the record clearly shows that the $200 monthly "air crew" compensation which Burggraf Corporation reported to the worker's compensation insurer was only an estimate of the monthly compensation paid to Mr. Chaffin, and that the figure was adjusted at the end of the year to reflect Mr. Chaffin's actual in-kind compensation for flying for Burggraf. Irene Brown, the Burggraf Corporation bookkeeper, testified that Mr. Chaffin was the "air crew" reported in the schedule of employees reported to the worker's compensation surety, and that the $200 per month salary figure reported to the insurer was an estimated figure. She further testified that, "We just paid that $200 a month and then the auditor would make a final determination at the end of the year." Mrs. Brown identified Exhibit 29A, the audit adjustment of the insurance company for the year 1986, and testified regarding the adjustment made to the premium for the air crew which had been made on the $200 per month estimate. She pointed out on Exhibit 29A where the final premium was computed as "per pilot's log." There was no testimony to the contrary. The plaintiffs offered no testimony relating to the worker's compensation coverage issue. There was no evidence in the record to support the trial court's rationale that John Chaffin was not the "air crew" referred to in the worker's compensation premium computation, or that the compensation figure for the "air crew" bore no resemblance to the compensation received by Mr. Chaffin. The only evidence in the record—Irene Brown's testimony and Exhibit 29A, the

audit report of the insurer—is to the contrary.

Other evidence in the record further shows, as the trial court acknowledged, that Mr. Chaffin earlier had been paid worker's compensation benefits as an employee of Burggraf for some cracked ribs received in an accident at the airport when Mr. Chaffin was there for the purpose of flying for the Burggraf Corporation. Mr. Chaffin filled out the claim form himself for this accident listing himself as an employee of the Burggraf Corporation, which the Burggraf Corporation and its surety accepted and paid. Nonetheless, based on the trial court's assumption that the Burggraf Corporation's worker's compensation insurance premium was based on an "air crew" salary of $200 per month, which did not correspond to the actual compensation which Mr. Chaffin received, the court concluded that Mr. Chaffin actually was not eligible for worker's compensation benefits for that injury. The court stated, "[T]he fact a claim was made and benefits paid did not tip the scales in favor of defendants." However, the uncontradicted evidence in the record, both documentary and testimonial, demonstrates that the "air crew" was Mr. Chaffin, and that the final premium was adjusted after an "audit" of his pilot's log, to be based on his actual in-kind compensation.

Regarding the Form 1099, the court stated that if there had been a conscious decision on the part of the Burggraf Corporation to classify Mr. Chaffin's status as an employee, there would have been a W-2 form filed with the I.R.S. rather than a Form 1099. However, again the uncontroverted testimony was that the income which was reported on the 1099 form was not income which Mr. Chaffin received for his services as a pilot for the Burggraf Corporation, but was the income which he received as the pilot of charter flights in the aircraft. Robert Burggraf, Jr., president of the Burggraf Corporation, testified, "When we did charter work, Mr. Chaffin was compensated either by us or the lessee. If we compensated him for charter work we—we would produce a 1099 form for that year showing his work done on the charter flights." Mr. Burggraf further testified that, with regard to the payments-in-kind for flying the aircraft for the Burggraf Corporation, in response to the question, "There was no reporting of the value of the [in-kind] hours by you to the government, the I.R.S., by the Idaho corporation?" he answered, "That's correct." Again, the plaintiffs did not introduce any evidence on this subject. The trial court's analysis incorrectly assumes that the income reported on the Form 1099 was income for piloting for the Burggraf Corporation and reflects a misunderstanding of the uncontradicted evidence that the income reported on the I.R.S. Form 1099 was for charter flying, not the in-kind compensation for piloting for the Burggraf Corporation.

In *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 803 P.2d 993 (1991), this Court, in an analogous situation, found that the trial court failed to properly focus on the correct test involving sanctions imposed pursuant to I.R.C.P. 11(a)(1). Due to this improper focus, we concluded in the *Sun Valley* case that the trial court's reasoning did not support an award of sanctions under I.R.C.P. 11(a)(1), and therefore the trial court had abused its discretion in awarding those sanctions. In the *Sun Valley* case we stated that while "the trial court understood it had a choice to make ... we conclude that the focus the trial court gave to the making of the choice was incorrect." 119 Idaho at 94, 803 P.2d at 1000.

Similarly, in this case, the trial court's focus was misplaced when it attempted to speculate on how the corporation itself would have classified Mr. Chaffin's employment status if it had considered the list of questions which the trial court thought the Burggraf Corporation ought to have considered in arriving at its determination of whether or not Chaffin was an employee. By focusing on what the trial court thought the Burggraf Corporation ought to have considered, rather than evaluating the evidence upon which the parties submitted the case to the jury, particularly the uncontradicted evidence with regard to the work-

er's compensation coverage and that it was the charter income which was reported on the I.R.S. Form 1099, not the in-kind compensation, we conclude as we did in *Sun Valley Shopping Center v. Idaho Power Company*, "that the focus the trial court gave to the making of the choice was incorrect," and that the trial court erred in setting aside the unanimous verdict of the jury that Chaffin was an employee of Burggraf Corporation at the time of the air crash.

Accordingly, the order of the district court granting a new trial is reversed and the cause remanded with directions to enter a judgment for the defendants on the verdict. Costs to appellant; no attorney fees awarded.

BISTLINE, J., and McDERMOTT, J. Pro Tem., concur.

JOHNSON and McDEVITT, JJ., concur in result.

JOHNSON, Justice, concurring in the result.

I agree that we should reverse and remand. I am not able, however, to agree that we should reach this result based on the abuse of discretion analysis contained in the lead opinion. I would premise the decision on the analysis contained in footnote 3.

*Quick v. Crane*, 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986) requires that we uphold the trial court's grant or denial of new trial motions "unless the court has *manifestly* abused the wide discretion vested in it." (Emphasis in original.) Our usual abuse of discretion analysis does not consider "manifest abuse" of discretion. I cannot agree that the abuse of discretion identified in the lead opinion was manifest, that is, "unmistakable, indubitable, indisputable, evident, and self-evident." Black's Law Dictionary 962 (6th ed. 1990).

The trial court concluded that "a different result *may* occur" in a retrial rather than concluding that a different result *"would* follow a retrial" as required by *Blaine v. Byers*, 91 Idaho 665, 671, 429 P.2d 397, 403 (1967) (emphasis added). In my view, this necessitates reversal.