25 P.3d 100

Patrick SHERIDAN, Susan Sheridan, husband and wife individually and as Guardians Ad Litem for Cal Sheridan, a minor, Plaintiffs–Respondents,

v.

John J. JAMBURA, M.D., David B. Bettis, M.D. and John Does I–V, Defendant–Appellant,

and

St. Luke's Regional Medical Center, Defendants.

No. 25823.

Supreme Court of Idaho, Boise, February 2001 Term.

May 22, 2001.

Hawley, Troxell, Ennis & Hawley, Boise, for appellant.   Joseph D. McCollum, Jr., argued.

Hepworth, Lezamiz & Hohnhorst, Boise, for respondents.   J. Charles Hepworth, argued.

TROUT, Chief Justice.

This is an appeal from the district judge's grant of a new trial pursuant to I.R.C.P. 59(a)(6).

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts and procedural history of this case are recounted in *Sheridan v. St. Luke's Regional Medical Center*, 135 Idaho 775, 25 P.3d 88 (2001).

## II.

## STANDARD OF REVIEW

Dr. Jambura appeals the district judge's grant of new trial under Rule 59(a)(6).   Idaho Rules of Civil Procedure, Rule 59(a)(6) provides:

A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons: . . .

(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

A trial judge may grant a new trial based on I.R.C.P. Rule 59(a)(6) where "after he has weighed all the evidence, including his own determination of the credibility of the witnesses, he concludes the verdict is not in accord with his assessment of the clear weight of the evidence." *Quick v. Crane,* 111 Idaho 759, 766, 727 P.2d 1187, 1194 (1986). The trial court is given broad discretion in this ruling. *Id.* The trial judge may set aside the verdict even though there is substantial evidence to support it. *Id.* (citation omitted). In addition, the trial judge is not required to view the evidence in a light most favorable to the verdict-winner. *Id.* Addressing the considerable discretion given to the trial court in deciding motions for new trials, this Court has said:

"[t]he trial court may grant a new trial when it is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice."

*Blaine v. Byers,* 91 Idaho 665, 671, 429 P.2d 397, 403 (1967) (citing *Tibbs v. City of Sandpoint,* 100 Idaho 667, 669, 603 P.2d 1001, 1003 (1979)).   Furthermore, "[i]f having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial." *Quick,* 111 Idaho at 768, 727 P.2d at 1196.

■ This Court has specifically outlined the standard of appellate review of a grant of a new trial under Rule 59(a)(6).

When considering an appeal from a district court's ruling on a motion for new trial, this Court applies the abuse of discretion standard. *Bott v. Idaho State Building Authority*, 122 Idaho 471, 835 P.2d 1282 (1992). This Court consistently has recognized the district court's wide discretion to grant or refuse to grant a new trial, and, on appeal, this Court will not disturb a district court ruling, absent a showing of manifest abuse of that discretion. *First Realty & Investment Co. v. Rubert*, 100 Idaho 493, 600 P.2d 1149 (1979). Although this Court necessarily must review the evidence, it primarily focuses on the process by which the district court reached its decision, not on the result of the district court's decision. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). Thus, the sequence of this Court's inquiry is:

(1) whether the district court correctly perceived the issue as one of discretion; (2) whether the district court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the district court reached its decision by an exercise of reason.

*Hughes v. State of Id. Dept. of Law*, 129 Idaho 558, 561, 929 P.2d 120, 123 (1996) (citing *Sun Valley Shopping Center v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)). This Court's review of the evidence is not a weighing of the evidence.

The trial court is in a far better position to weigh the demeanor, credibility and testimony of witnesses, and the persuasiveness of all the evidence. Appellate review is necessarily more limited. While we must review the evidence, we are not in a position to "weigh" it as the trial court can.

*Quick*, 111 Idaho at 770, 727 P.2d at 1198 (citing *Dinneen v. Finch*, 100 Idaho 620, 626, 603 P.2d 575, 581 (1979)). The focus, instead, is on the process by which the court reached its result. *Hughes*, 129 Idaho at 561, 929 P.2d at 123.

## III.

## DISCUSSION

### A. Grant of new trial under I.R.C.P. Rule 59(a)(6).

■ As noted above, the review of a grant of a new trial under I.R.C.P. Rule 59(a)(6) is under an abuse of discretion standard, which invokes the three-part *Sun Valley* test. *See Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 803 P.2d 993 (1991).

*(1) The district judge properly perceived the grant of new trial as an issue of discretion.*

The first inquiry under the *Sun Valley* test is whether the district judge correctly perceived the issue as one of discretion. 119 Idaho at 94, 803 P.2d at 1000. The district judge's Memorandum Decision demonstrates the judge properly perceived the Rule 59(a)(6) issue as one of discretion, stating that:

Under Rule 59(a)(6), I am to make my own findings of fact and conclusions of law, and measure my findings against that of the jury.... If I conclude, based upon my assessment of the evidence, that the jury result was wrong, I may intervene and grant a new trial .... I am directed to act with restraint. I am to respect the collective wisdom of the jury, and to intervene only if I am convinced that an injustice has been done and a mistake has been made.

*(2) The district judge acted within the outer boundaries of his discretion and consistently with the legal standards applicable to the specific choices available to him.*

The second inquiry under the *Sun Valley* test requires this Court to determine whether the district judge acted within the outer boundaries of his discretion and consistently with the legal standards applicable to the specific choices available to him. 119 Idaho at 94, 803 P.2d at 1000. In reviewing a decision on a motion for new trial, this element is analyzed under a two-prong test.

*Burggraf v. Chaffin,* 121 Idaho 171, 174, 823 P.2d 775, 778 (1991).

> The first prong directs the trial judge to consider whether the verdict was against the weight of the evidence and if the ends of justice would be served by vacating the verdict. The second prong . . . directs the trial court to consider whether a different result would follow in a retrial.

*Id.* (citing *Robertson v. Richards,* 115 Idaho 628, 769 P.2d 505 (1989); *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967)).

The first prong simply requires the district court to make an independent determination as to whether the evidence supports the verdict. *Robertson,* 115 Idaho at 631, 769 P.2d at 508. (citations omitted). The district judge understood and applied this standard, recognizing:

> I am not obligated to construe the evidence in favor of one side or the other, but am directed to weigh all of the evidence in making my analysis. If I conclude, based upon my assessment of the evidence, that the jury result was wrong, I may intervene and grant a new trial.

■ The district judge clearly understood his role in weighing the evidence, however, Dr. Jambura argues the district judge exceeded the bounds of his discretion by discounting the expert testimony offered by the defendants. Specifically, Dr. Jambura argues the district judge abused his discretion by "refusing to weight" or "disregarding" the expert testimony of Drs. Latchaw, Vlcek, Glass and Molteni. This Court has long recognized that the trial judge, sitting at the heart of the trial process, is in a position that those on the appellate level cannot duplicate. *Robertson,* 115 Idaho at 631, 769 P.2d at 508. The "trial court is in a far better position to weigh the demeanor, credibility, and testimony of witnesses, and the persuasiveness of all the evidence." *Burggraf,* 121 Idaho at 173, 823 P.2d at 777 (citing *Quick,* 111 Idaho at 770, 727 P.2d at 1198). Because of the trial judge's unique position of having heard all of the testimony and examined all of the evidence, their weighing of the evidence in a motion for new trial is given considerable discretion. *Quick,* 111 Idaho at 767, 727 P.2d at 1198. *See also, Robertson,* 115 Idaho at 631, 769 P.2d at 508. The district judge's determination to discount the testimony of the defendant's expert witnesses; therefore, was a proper exercise of his discretion in weighing the demeanor, credibility and persuasiveness of the evidence.

Dr. Jambura further argues the district judge abused his discretion by considering matters outside the record. This argument is based on language in the Memorandum Decision criticizing the expert witnesses as "straining [their] opinion[s] to meet the requirements of advocacy" and "willing to bend their testimony." Again, the district judge's critical assessment of the experts in this case is a proper exercise of his discretion to independently weigh the demeanor, credibility and testimony of witnesses.

■ Finally, Dr. Jambura argues the clear weight of the evidence does not support the judge's conclusions that Cal's cerebral palsy was caused by kernicterus, or that Dr. Jambura breached the standard of care. These arguments misapply our standard of review. On review, this Court does not independently weigh the evidence, but simply reviews the evidence and scrutinizes the process by which the district judge's decision was made. *Hughes,* 129 Idaho at 561, 929 P.2d at 123.

The district judge made an independent evaluation of the demeanor, credibility, and testimony of the witnesses, and the persuasiveness of all the evidence. Based on this evaluation, he concluded the verdict was against the weight of the evidence and the ends of justice would be served by vacating it. Therefore, the first prong of the *Blaine* test is met.

The second prong of the *Blaine* test is also met. In granting a motion for a new trial, our precedent requires the district judge to find that a retrial would produce a different result. *Lanham v. Idaho Power Co.,* 130 Idaho 486, 498, 943 P.2d 912, 924 (citing *Heitz v. Carroll,* 117 Idaho 373, 378, 788 P.2d 188, 193 (1990); *Robertson v. Richards,* 115 Idaho 628, 631–32, 769 P.2d 505, 508–09 (1989)). The district judge specifically made this finding as evidenced by the Memorandum Decision, which states:

I am unable to reconcile the jury's verdict in this case with the evidence. I am unable to ascertain how they could have exonerated Dr. Jambura based upon the facts of the case and the overwhelming weight of the expert testimony on point. I was dumbfounded by the verdict against this defendant, and I am convinced a mistake was made. It would be an injustice not to permit the plaintiff to try the case again against this defendant. I am satisfied that a properly deliberative jury, faced with this evidence in a new trial, would reach a different conclusion.

The district judge correctly identified and applied the standards governing its decision to grant a new trial. First, he acknowledged he was required to make an independent evaluation. Based on his evaluation of the expert witnesses and the persuasiveness of all the evidence, the district judge concluded the jury made a mistake, an injustice had been done, and a different result would follow in a retrial. Therefore, we find the district judge acted within the outer bounds of his discretion and consistently with the legal standards applicable to the specific choices available to him.

### (3) The district judge reached his decision by an exercise of reason.

■ Our final inquiry under the three-part *Sun Valley* test is whether the district judge reached his decision by an exercise of reason. 119 Idaho at 94, 803 P.2d at 1000. Our role again is to review the process of the district judge in rendering his decision. *Quick,* 111 Idaho at 772, 727 P.2d at 1200. In order for this Court to perform this function properly, we require the district judge to disclose his reasoning for granting or denying the motion for a new trial unless those reasons are obvious from the record itself. *Id.* The district judge demonstrated in his Memorandum Decision that his grant of a new trial was based on a careful consideration of the relevant factual circumstances and principles of law.

On the issue of breach of the standard of care, the district judge specifically recounted:

The evidence was overwhelming that jaundice appearing within the first 24 hours of life is an ominous sign, and cannot be ignored or overlooked. In this case, Dr. Jambura failed to note, or if noted failed to follow up on the nurse's chart note at 17 hours of life, the nurse's chart note at 23 hours of life, and his own observations at 33 hours of life. He made no inquiry of the nurses concerning their observations on the progress or development of the jaundice. He did not direct that a bilirubin test be obtained when the onset of jaundice was first noted, or at any time thereafter before Cal left the hospital. He did not conduct any investigation into the cause of the early signs of jaundice. He authorized the discharge of Cal despite signs of rapidly progressing jaundice which was appearing at a far earlier age than is normal for physiologic jaundice.

When he next saw the infant at his office on March 28, and despite what was by then severe jaundice, he did not hospitalize the infant or test Cal's bilirubin levels. The first bilirubin test was not obtained until the evening of March 29, when it measured 34.6. Despite this very high bilirubin level, Dr. Jambura did not refer the infant to a neonatologist, although one was available on staff at the hospital. When he talked with the neonatologist on the telephone, he did not advise him that (a) the jaundice had appeared within the first 24 hours of life, (b) that it had progressed to the entire body by 36 hours of life, (c) that Cal was a blood type A and mom was type O, (d) or that he had diagnosed the infectious process of otitis media. Dr. Jambura did not return to the neonatologist when he learned that the second bilirubin test, obtained several hours after admission, was still over 30. Dr. Jambura did not proceed with an exchange blood transfusion.

Based on his evaluation of the evidence presented, the district judge concluded that the evidence was "overwhelming that Dr. Jambura did not meet the applicable standard of care."

Additionally, regarding the element of proximate cause, the district judge specifically recognized the "diametrically opposed" expert testimony from radiologists on the interpretation of the MRI studies performed on

792

Cal and the conflicting expert testimony on the diagnosis of kernicterus. Critical of the experts, and in recognition of his role in independently weighing the evidence, the district judge concluded:

> The jury went one way, perhaps on the question of whether Cal had kernicterus or something else, and I have concluded the jury was wrong. On the issue of proximate cause, I conclude that the weight of the evidence offered by the plaintiff on the issue of the diagnosis of kernicterus overwhelmed the defense witnesses and evidence. I discard the inconsistent testimony of the neuro-radiologists as unintelligible to the lay person and of no consequence in any event. I accept the testimony of the other witnesses that kernicterus is a clinical diagnosis, and that the imaging studies are not conclusive either way. I accepted the opinions of Drs. Bennett, the treating physician from the University of Washington who finally identified and made the diagnosis, Dr. MacMahon from Stanford University children's hospital and the author of chapters in medical texts on the precise subject of hyperbilirubinemia and its consequences, and Dr. Johnson, the pediatrician from Philadelphia who has been involved in the study of kernicterus in newborn infants for her entire 50 some year medical career.
>
> I discount the testimony of Dr. Moltini, who thought it was a virus, and of Drs. Glass and Vlcek, who was only 49% sure it was kernicterus. . . .
>
> I find and conclude that the evidence was compelling that Cal was and is suffering from kernicterus, and therefore any errors in the identification and treatment of the predicate hyperbilirubinemia were a proximate cause of this condition.

The district judge specifically articulated the reasons for granting a new trial against Dr. Jambura. He has clearly given due consideration to the facts and circumstances of the case, and correctly applied the law thereto; therefore, we find his decision to grant a new trial was based on an exercise of reason.

**B.  Attorney's fees.**

The Sheridans seek an award of attorney's fees on appeal. Their argument on this issue consists of two conclusory sentences stating that the appeal simply asks this Court to second guess the district court's weighing of the evidence and is without substantial justification in law or fact. "This Court will not consider issues cited on appeal that are not supported by propositions of law, authority, or argument." *Perkins v. U.S. Transformer West,* 132 Idaho 427, 432, 974 P.2d 73, 78 (1999) (citing *Meisner v. Potlatch Corp.,* 131 Idaho 258, 263, 954 P.2d 676, 681 (1998)). Because the Sheridans provided no law, authority or argument on the issue of attorney's fees, we decline to consider the issue.

## IV.

### CONCLUSION

The district judge recognized its discretionary authority, followed the legal standards governing disposition of the motion for a new trial, and reached its decision based upon an exercise of reason. Therefore, we find the district judge did not abuse its discretion in granting a new trial under I.R.C.P. 59(a)(6) and that decision is affirmed. We award costs on appeal to the Sheridans.

Justices SCHROEDER, WALTERS, KIDWELL and Judge Pro Tem HURLBUTT, concur.